**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LINDA RICE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 12-cv-1395 |
| ) | |
| MIDLAND CREDIT MANAGEMENT, INC., ) | Judge Robert M. Dow, Jr. |
| MIDLAND FUNDING, LLC, and ENCORE ) | |
| CAPITAL GROUP, INC formerly known as ) | |
| MCM CAPITAL GROUP, INC., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

For the reasons stated below, Defendants' motion to dismiss [20] is granted. Plaintiff's motion for class certification [41] is denied as moot. Additionally, Plaintiff's motion for leave to file a sur-reply [26] is granted; the Court considered Plaintiff's sur-reply [26] and Defendants' objection to Plaintiff's sur-reply [29] in deciding Defendants' motion to dismiss. Finally, in view of the granting of Defendants' motion to dismiss, Plaintiff's motion for leave to conduct deposition of expert witness [56] is denied. This case is set for status hearing on April 3, 2013, at 10:00 a.m.

**I.     Background**

Plaintiff Linda Rice alleges that beginning in April 2011 Defendants sent her a series of letters to collect on a debt. The letters offer Plaintiff a way to "resolve this obligation with a plan that fits your particular situation" and an opportunity to "settle your account" with monthly payment plans that discount the alleged debt. The last payment on the alleged debt was on

January 19, 2006. The statute of limitations on a credit card bill in Illinois, where Plaintiff resides, is five years. Nothing in the letters sent to Plaintiff disclosed that the debt was barred by the statute of limitations in Illinois or disclosed the date of the transactions that gave rise to the alleged debt.

Plaintiff alleges that Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e, 1692e(2), 1692e(10), and 1692f by sending her letters claiming a right to collect a time-barred debt. Defendants have moved to dismiss [20].

## II.    Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss is not to decide the merits of the case; a Rule 12(b)(6) motion tests the sufficiency of the complaint. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss under Rule 12(b)(6), the Court takes as true all factual allegations in Plaintiff's complaint and draws all reasonable inferences in his favor. *Killingsworth v. HSBC Bank Nevada, NA*, 507 F.3d 614, 618 (7th Cir. 2007). To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However,

2

"[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *cf. Scott v. City of Chi.*, 195 F.3d 950, 952 (7th Cir. 1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole.").

**III.    Analysis**

The FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in collection of any debt." 15 U.S.C. § 1692e. In its (nonexclusive) list of violations, § 1692e prohibits the false representation of "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Moreover, "[a] debt collector may not use unfair or unconscionable means to collect any debt," including "[t]he collection of any amount * * * unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. §§ 1692f, 1692f(1).

Plaintiff alleges that "Defendants engaged in unfair and deceptive acts and practices * * * by dunning consumers on time-barred debts without disclosure of that fact." Compl. ¶ 46. "The nondisclosure is exacerbated by the offer of a 'settlement' * * * . The offer of a settlement implies a colorable obligation to pay." Compl. ¶ 46.

To begin, the Court agrees with Plaintiff that the offer in Defendants' letters to "settle your account" implies a "colorable obligation to pay." Indeed it does, and not improperly, for in Illinois "[s]tatutes of limitations are procedural, merely fixing the time in which the remedy for a wrong may be sought, and do not alter substantive rights." See *Bellville Toyota, Inc. v. Toyota Motor Sales, U.S.A*, 770 N.E.2d 177, 194 (Ill. 2002). In other words, under Illinois law, "the

3

statute of limitations bars a specific remedy; it does not extinguish indebtedness." *Walker v. Cash Flow Consultants, Inc.*, 200 F.R.D. 613, 616 (N.D. Ill. 2001). If the indebtedness is not extinguished, there is an obligation to pay, even if that obligation could not be enforced in court because the defendant would have a winning limitations defense. See *Crawford v. Vision Financial Corp.*, 2012 WL 5383280, at *2 (N.D. Ill. Nov. 1, 2012). In this case, Plaintiff is not challenging her obligation to repay the alleged debt, but only whether the FDCPA requires Defendants to disclose the nature of her obligation, and specifically that it is not an obligation that Defendants could enforce through a lawsuit.

Numerous courts in this district have concluded that an attempt to collect a valid but time-barred debt — even in the absence of a disclosure that the debt is time-barred — does not violate the FDCPA unless there is also an express or implied threat of litigation. See *Crawford*, 2012 WL 5383280, at *2; *Magee v. Portfolio Recovery Associates, LLC*, 2012 WL 3560996, at *3 (N.D. Ill. Aug. 15, 2012); *McMahon v. LVNV Funding, LLC*, 2012 WL 2597933, at *2 (N.D. Ill. July 5, 2012); *Murray v. CCB Credit Servs., Inc.*, 2004 WL 2943656, at *2 (N.D. Ill. Dec. 15, 2004); *Walker*, 200 F.R.D. at 616. The two federal appellate courts that have considered this issue have reached the same conclusion. See *Huertas v. Galaxy Asset Management*, 641 F.3d 28, 33-34 (3rd Cir. 2011) (agreeing with the "majority of courts [that have] held that when the expiration of the statute of limitations does not invalidate a debt, but merely renders it unenforceable [through a lawsuit], the FDCPA permits a debt collector to seek voluntary repayment of the time-barred debt so long as the debt collector does not initiate or threaten legal action in connection with its collection efforts"); *Fryermuth v. Credit Bureau Services, Inc.*, 248 F.3d 787, 771 (8th Cir. 2001) ("in the absence of a threat of litigation or actual litigation, no

4

violation of the FDCPA has occurred when a debt collector attempts to collect on a potentially time-barred debt that is otherwise valid").

So although the Seventh Circuit has not yet considered whether attempting to collect on a valid but time-barred debt without disclosing that the debt is time-barred violates the FDCPA, courts in this district (and outside it) are in broad agreement that it does not. Plaintiff does not dispute that most courts have taken that view, but she believes that the Court should reach a different conclusion in this case in light of the Federal Trade Commission's complaint and the parties' consent decree in *Federal Trade Commission v. Asset Acceptance*, *LLC*, Case No. 12-cv-182 (M.D. Fla. Jan. 31, 2012). In that case, the FTC sued Asset Acceptance alleging a variety violations of the FTC Act, Fair Credit Reporting Act, and the FDCPA. In Count VIII of FTC's complaint, the FTC alleged that Asset Acceptance's failure to disclose that a debt was time-barred was deceptive under the FDCPA and was an unfair or deceptive under § 5(a) of the FTC Act. The same day as the FTC filed its complaint, the parties entered a consent decree. By its terms, the decree was not an "adjudication of any issue of fact or law" and Asset Acceptance did not admit any of the complaint's allegations other than the jurisdictional facts. Nevertheless, Plaintiff focuses on two details of the parties' settlement: Asset Acceptance agreed to pay $2.5 million and include the following language in collection letters attempting to collect a time-barred debt: "The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it."

In further support of her position that failing to make a disclosure similar to the one now required of Asset Acceptance violates the FDCPA, Plaintiff refers the Court to an FTC press release about the settlement with Asset Acceptance and a 2010 FTC report titled "Repairing A Broken System: Protecting Consumers in Debt Collection Litigation and Arbitration." *Available*

*at* http://ftc.gov/os/2010/07/debtcollectionreport.pdf. The report is based on the FTC's assessment of the debt collection system, 2009 roundtable discussions in three cities, and recent developments in the use of arbitration to resolve debt collection disputes. At the conclusion of the executive summary, the FTC explained that it "believ[ed] that articulating its views would be helpful in reforming the system of debt collection litigation and arbitration." Report at ii. The report makes a variety of recommendations, including that "[s]tates should consider adopting measures to make it more likely that consumers will defend in litigation"; "[s]tates should take steps to make it less likely that collectors will sue on time barred debt and that consumers will unknowingly waive statute of limitations defenses available to them"; "[c]onsumers should be given a meaningful choice about arbitration"; and "[a]rbitration forums and arbitrators should eliminate bias and the appearance of bias." Report at iii-iv.

On the issue of time-barred debt, the report observed that "state law generally does not prohibit collectors from using methods other than threatening to file or filing an action in court to collect on time-barred debt." Report at 25. It went on to note that roundtable participants "differed in their views about whether the FDCPA should be amended to bar the collection of time-barred debt" and that the FTC "takes no position on whether the FDCPA should be amended to preclude collectors from collecting debt that they know or should know is time-barred. Nevertheless, because most consumers do not know or understand their legal rights with respect to the collection of time-barred debt, the Commission believes that in many circumstances such a collection attempt may create a misleading impression that the collector can sue the consumer in court to collect the debt, in violation of Section 5 of the FTC Act and Section 807 of the FDCPA. To avoid creating this misleading impression, collectors would need to disclose clearly and prominently to consumers before seeking payment on such time-barred

6

debt that because of the passage of time, they can no longer sue in court to collect the debt or otherwise compel payment." Report at 26-27.

Because the FTC had "some interpretive and enforcement authority with respect to the FDCPA" (see *Carter v. AMC, LLC*, 645 F.3d 840, 843 (7th Cir. 2011) (citing 15 U.S.C. §§ 1692k(e), 1692*l*, 1692o)) at the time it reached a settlement with Asset Acceptance and published its report on reforming the debt collection system, Plaintiff argues that the settlement and report are entitled to *Chevron* deference or, in the alternative, *Skidmore* deference. See *Chevron, U.S.A., Inc. v. NRDC,* 467 U.S. 837 (1984); *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944); *United States v. Mead Corp.,* 533 U.S. 218 (2001). And if that is so, Plaintiff's argument continues, plausibly alleging that Defendants have attempted to collect time-barred (but otherwise valid) debt from Plaintiff without disclosing that Plaintiff cannot be sued on that debt states a claim under the FDCPA. In essence, Plaintiff believes that the FTC's position in the Asset Acceptance litigation and the 2010 report added disclosure requirements to the FDCPA and that failure to comply with those requirements in collection letters amounts to an unfair or deceptive means of collecting a debt in violation of 15 U.S.C. §§ 1692e and 1692f.

Plaintiff's legal theory has been tested and rejected three times in this judicial district. *Crawford*, 2012 WL 5383280, at *2; *Magee*, 2012 WL 3560996, at *4; *McMahon*, 2012 WL 2597933, at *2-*4. The Court finds those opinions persuasive and reaches the same result.

*Chevron Deference*. "When Congress has 'explicitly left a gap for an agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation,' and any ensuing regulation is binding in the courts unless procedurally defective, arbitrary or capricious in substance or manifestly contrary to the statute." *Mead*, 533 U.S. at 227 (quoting *Chevron*, 467 U.S. at 843-44). As Plaintiff recognizes, the FTC does not have

7

rulemaking power under the FDCPA, and so there is not an express delegation of interpretive authority. See 15 U.S.C. § 1692*l*. Although "legislative delegation to an agency on a particular question [may be] implicit," *id.* at 229 (quoting *Chevron*, 467 U.S. at 844), and so *Chevron* deference may still be required even absent express delegation, there is absolutely no basis to conclude that Congress gave the FTC rulemaking power under the FDCPA by allowing it to file complaints and settle cases. Complaints and consent decrees do not arise out of anything like a notice-and-comment procedure and the conclusions in consent decrees "may be contingent on the specific circumstances of the cases in which they were entered, including the particulars of the applicable state law." *Crawford*, 2012 WL 5383280, at *2 n. 1; *Altria Group, Inc. v. Good*, 555 U.S. 70, 89 n. 13 (2008) (rejecting the argument that a settlement with the FTC is evidence of the FTC's position on a point of law because a consent order is "only binding on the parties to the agreement").

And, of course, the FTC's 2010 report on the debt collection system is not entitled to *Chevron* deference. The report contains broad recommendations for *reforming* the debt collection system. Regardless of whether the FTC and the roundtable participants have offered astute observations and sound recommendations, the FTC did not suggest that by making such observations and recommendations that it was, through its report, actually making the reforms that it supported. It did not, in other words, "set out with lawmaking pretense." *Mead*, 533 U.S. at 233. At its strongest, the report observed that "*in many circumstances* [attempting to collect a time-barred debt] *may* create a misleading impression that the collector can sue the consumer in court to collect the debt" in violation of the FDCPA. Report at 26 (emphasis added). The report voiced concerns about the collection of time-barred debt, but it did not articulate rules that courts are bound to follow. See *Christensen v. Harris County*, 529 U.S. 576, 587 (2000)

8

("interpretations contained in policy statements, agency manuals, and enforcement guidelines, all which lack the force of law * * * do not warrant *Chevron*-style deference").

*Skidmore Deference.* Although the Court is not bound by the FTC's litigation documents in an unrelated case and its 2010 report for reforming the debt collection system, that does not mean that the Court must go to the opposite extreme and disregard them. They could have the power to persuade, and so will be "accorded respect depending on [their] persuasiveness." *Matz v. Household Intern. Tax Reduction Inv. Plan*, 265 F.3d 572, 574 (7th Cir. 2001). As Justice Jackson explained in *Skidmore*, interpretations and opinions of administrative agencies, even "when not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." 323 U.S. at 140.

That said, the Court will not defer to the interpretation of the FDCPA's requirements arguably implicit in the litigation documents in the Asset Acceptance litigation. See *Crawford*, 2012 WL 5383280, at *2 n. 1; *Magee*, 2012 WL 3560996, at *4; *McMahon*, 2012 WL 2597933, at *2-*4. In fact, the suggestion that the Court should show *Skidmore*-type deference to a complaint and consent decree borders on incoherence, for there is no persuasive content for the Court to show such deference to. In a complaint, for example, the FTC is free to test a legal theory, but like any other litigant, it is constrained by law. The FTC does not undercut the persuasive authority of judicial opinions that have rejected a legal theory (that the FDCPA requires disclosures about time-barred debt) merely by asserting it in a complaint. Like any

9

other litigant, the FTC must confront conflicting authority, and a complaint alone does not do that.

The consent decree is equally unpersuasive. A consent decree is an "agreement of the parties" and its "power does not come from the 'force of the law upon which the complaint was originally based'" *Magee*, 2012 WL 3560996, at *4 (quoting *Local No. 93, Intern. Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 529 (1986)). The settlement in *Asset Acceptance* illustrates the point: it resolved a broad range of claims under three statutes by negotiation, not adjudication. At best, it would be imprudent to infer anything about how the FDCPA ought to be construed based on the way the parties structured their agreement.

In at least two cases, courts appear to have reached a different conclusion about the persuasive authority of settlement documents. First, in *FTC v. Mandel*, 359 U.S. 385 (1959), the Supreme Court was presented with the question of whether a retail sales slip qualified as an "invoice" under the Fur Products Labeling Act. *Mandel* held that it was, and that the opposite conclusion would be a "partial mutilation of the Act." *Id.* at 389. *Mandel* articulated four separate grounds for that conclusion, and the fourth was that "[t]he inclusion of retail slips in invoices has been the consistent administrative construction of the Act," and that "contemporaneous construction" was entitled to "great weight [citations omitted] even though it was applied in cases settled by consent rather than in litigation." *Id.* at 391. At least two points distinguish *Mandel* from this case. First, the settlements referred to in *Mandel* were additional support for a conclusion that was otherwise well-supported. Second, *Mandel* did not give weight to one complaint and one settlement, as Plaintiff urges in this case, but rather to "consistent administrative construction of the act" in 137 complaints and 92 settlements. *Id.* at 391 n. 6.

Plaintiff's position in this case is not supported by "consistent administrative construction," and consistent judicial constructions reject her view.

Second, in *Ramson v. Layne*, 668 F. Supp 1162 (N.D. Ill. 1987), Judge Shadur considered consent agreements on his way to concluding that Lloyd Bridges could be sued for "endorser liability" under the Illinois Consumer Fraud and Deceptive Practices Act for pitching a product that allegedly defrauded the plaintiff. As in *Mandel*, the court considered the consent decrees only after ample authority had been cited for the conclusion also (arguably) supported by the consent orders. *Id.* at 1166-67. For example, before considering three settlements with pitchmen charged as endorsers, the court had already declared that the defendant's "construction of the Illinois [Consumer Fraud and Deceptive Practices] Act finds support neither in the Act's language nor in the case law." *Id.* at 1166. It appears that the consent orders were cited to dissolve the defendant's last counter-arguments. See *Id.* ("Bridges thinks his distorted reading of the Illinois Act * * * is supported by cases applying the [FTC] Act. It is not."). In this case, by contrast, a single consent decree is the centerpiece of Plaintiff's argument.

The 2010 report — based on workshops and the FTC's experience addressing debtor complaints under the FDCPA — provides a clearer statement of the FTC's position and, as far as it goes, is entitled to some deference. See *McMahon*, 2012 WL 2597933, at *3-*4 (giving the 2010 report "little deference"). But regardless of the weight that the report may be due as a considered discussion of the FDCPA by the FTC, its conclusions about time-barred debt are too general and equivocal to convince the Court that it should conclude that Plaintiff has stated a claim in this case. See *id.* (finding the report "ambiguous"). The report does not call on courts to read the FDCPA one way or another, but only highlights a concern — really, a slew of concerns along with possible reforms. Most relevant for Plaintiff's argument, the report states

11

that "*in many circumstances* such a collection attempt *may* create a misleading impression that the collector can sue the consumer in court to collect the debt, in violation of Section 5 of the FTC Act and Section 807 of the FDCPA." Report at 26 (emphasis added); see *McMahon*, 2012 WL 2597933, at *3-*4. But that statement only throws the Court back to the original question: do the letters that Defendants sent to Plaintiff to collect on a time-barred debt create a misleading impression that the collector can sue Plaintiff to collect the debt?

To answer that question, the Court takes the perspective of an "unsophisticated consumer" — that is, one who "may be uninformed naïve and trusting, but is not a dimwit, has rudimentary knowledge about the financial world and is capable of making basic logical inferences." *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012) (internal citations and quotations omitted). As noted above, most courts considering whether an attempt to collect a time-barred but otherwise valid debt without disclosing that the debt is time-barred, but without threatening to sue, have concluded that such conduct would not be unfair or misleading to the unsophisticated consumer, and so does not violate the FDCPA. See, *e.g.*, *Crawford*, 2012 WL 5383280, at *2; *Magee*, 2012 WL 3560996, at *4; *McMahon*, 2012 WL 2597933, at *2-*4.

Most courts have drawn the line between lawful and misleading or unfair attempts to collect time-barred debt at a threat to sue: without at least an implied threat, there is no claim under the FDCPA. In the Court's opinion, the line has been drawn in the right place. As it is in this case, a debt may be "time-barred" in the sense that it cannot be collected through a lawsuit, but not "time-barred" in the sense that it is no longer a debt. So long as a debt is valid, debt collectors have a right to collect it. Because an unsophisticated consumer is not a "dimwit" and is capable of making "basic logical inferences," it is not misleading to truthfully state in a letter that a debt is owed and that paying it would settle the debtor's account. That is, after all, true. If

a debtor who receives such a letter jumps to the conclusion that he may be sued if he does not pay, that inference is not attributable to the letter. And where such an inference is attributable to a collection letter, because there is an explicit or veiled threat to sue, the settled law is that the debtor will have a good claim under the FDCPA. The FDCPA protects consumers against unfair and deceptive practices, but it does not require debt collectors to take the next step and explain to consumers how they might avoid paying valid debts. That might be good practical advice, but the debt collector has not wronged the consumer by failing to provide it. The Court believes that it is for Congress or the states to decide if Plaintiff's suggested disclosure rule should be the law. Some states have Plaintiff's favored rule, see, *e.g.*, North Carolina Gen. Stat. § 75-55 (unconscionable to attempt to collect a debt barred by the statute of limitations); 940 Code Mass. Regs. 7.07(24) (requiring disclosure that debtor cannot be sued on time-barred debt), but Illinois is not among them.

      The Court has emphasized that courts in this judicial district have repeatedly concluded that attempting to collect a time-barred debt without disclosing that the debtor cannot be sued on the debt does not, without more, violate the FDCPA, and that courts have done so even after reviewing the settlement in *Asset Acceptance* and the FTC's 2010 report. *Crawford*, 2012 WL 5383280, at *2; *Magee*, 2012 WL 3560996, at *4; *McMahon*, 2012 WL 2597933, at *2-*4. The Court should therefore also mention that one court in a different judicial district has reached the opposite conclusion and held that a plausible allegation that a debt collector's failure to disclose in a collection letter that the plaintiff could not be sued on time-barred debt stated a claim under §§ 1692e and 1692f of the FDCPA. *McRill v. Nationwide Credit, Inc.*, 2012 WL 6727974, at *6 (C.D. Ill. Dec. 6, 2012) (report and recommendation); 2012 WL 6727722, at *1 (C.D. Ill. Dec. 28, 2012) (accepting the magistrate judge's report and recommendation). The court in *McRill*

13

relied on the 2010 report discussed in this opinion and concluded that "absent a clear disclosure that the debt collector cannot sue the consumer in court, many consumers might believe that they will face serious negative consequences, like being sued, if they do not pay the debt." *McRill*, 2012 WL 6727974, at *6 (citation omitted). The Court respectfully disagrees. To violate §§ 1692e and 1692f of the FDCPA, the consumer's misperception that he or she could be sued must be attributable to a misrepresentation by the debt collector or its unfair or unconscionable conduct. The Court agrees with those courts that have held that the misperception imagined in *McRill* — that the debtor could be sued — is only attributable to the debt collector where the debt collector suggests (falsely) that it could collect the debt through a lawsuit. Absent a misrepresentation about what, if anything, the debt collector may do to collect the debt, the Court concludes that the FDCPA does not require a debt collector to take the affirmative step of declaring that it cannot sue. Although the FDCPA requires certain disclosures, it does not require a declaration that a debt collector cannot sue on time-barred debt. See 15 U.S.C § 1692g. The Court does not believe that such a disclosure requirement is implicit in the sections of the FDCPA prohibiting misrepresentations or unfair or unconscionable conduct. By and large, it is disclosure requirements that protect against what might be described as misrepresentations by omission; not having alleged a violation of the FDCPA's disclosure requirements and not having alleged that Defendants made any misstatement or engaged in any misconduct (beyond the alleged misconduct by omission), Plaintiff has failed to state a claim.

In sum, Plaintiff does not allege that the letters she received contained an explicit or implicit threat to sue but only that Defendants sent her letters attempting to collect on a valid but time-barred debt. Defendants have not violated the FDCPA by sending her such letters. Accordingly, Plaintiff has failed to state a claim and Defendants' motion to dismiss [20] is

granted. Plaintiff's motion for class certification [41] is denied as moot. See *Inman v. Shalala*, 30 F.3d 840, 844 n. 1 (7th Cir. 1994) (After rejecting the legal theory underlying Plaintiff's claim, the court declined to address issues related to class certification: "[w]hether or not a class exists is no longer important. The plaintiffs, whoever they are, can recover nothing by this action."); *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 633, 640 (7th Cir. 2007).

### IV. Conclusion

For the reasons stated above, Defendants' motion to dismiss [20] is granted. Plaintiff's motion for class certification [41] is denied as moot. Additionally, Plaintiff's motion for leave to file a sur-reply [26] is granted; the Court considered Plaintiff's sur-reply [26] and Defendants' objection to Plaintiff's sur-reply [29] in deciding Defendants' motion to dismiss. Finally, in view of the granting of Defendants' motion to dismiss, Plaintiff's motion for leave to conduct deposition of expert witness [56] is denied. This case is set for status hearing on April 3, 2013, at 10:00 a.m.

Dated: March 20, 2013 _____
Robert M. Dow, Jr.
United States District Judge