IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINDA RICE, on behalf of plaintiff and the class defined below, <br><br> Plaintiff, <br><br> v. <br><br> MIDLAND CREDIT MANAGEMENT, INC.; MIDLAND FUNDING LLC; and ENCORE CAPITAL GROUP, INC., formerly MCM CAPITAL GROUP, INC., <br><br> Defendants. | Case No.1:12-cv-01395 <br><br> Judge: Robert M. Dow, Jr. |

## ANSWER TO COMPLAINT – CLASS ACTION

Defendants, MIDLAND CREDIT MANAGEMENT, INC. ("MCM"); MIDLAND FUNDING LLC ("Midland"); and ENCORE CAPITAL GROUP, INC. ("Encore"), by and through their attorneys, David M. Schultz and Jennifer W. Weller with HINSHAW & CULBERTSON LLP, in Answer to Plaintiff's Complaint state as follows:

### INTRODUCTION

1. Plaintiff Linda Rice brings this action to secure redress from unlawful collection practices engaged in by defendants Midland Credit Management, Inc. ("MCM"); Midland Funding, LLC; and Encore Capital Group, Inc., formerly known as MCM Capital Group, Inc. ("Encore"). Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA").

**ANSWER:** Defendants admit that Plaintiff has made allegations in the Class Action Complaint relating to the FDCPA, but deny any liability to Plaintiff.

2. The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading

statements, in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

**ANSWER:** Defendants admit that Plaintiff attempts to paraphrase certain sections of the FDCPA and in further answering deny Plaintiff has fully or fairly set forth the referenced sections and denies any violation of the FDCPA.

## VENUE AND JURISDICTION

3. This Court has jurisdiction under 15 U.S.C. §1692k (FDCPA), 28 U.S.C.§1331 (general federal question) and 28 U.S.C. §1337 (interstate commerce).

**ANSWER:** Defendants admit that this Court has jurisdiction under 28 U.S.C. §§1331, 1337 and 15 U.S.C. §1692k. However, upon information and belief, this Court may lack jurisdiction over Plaintiff's claims against Defendants due to her agreement to arbitrate her claims.

4. Venue and personal jurisdiction in this District are proper because:

    a. Defendants' collection communications and activities impacted plaintiff within this District;

    b. Defendants do or transact business within this District.

**ANSWER:** Denied. Defendants Midland and Encore deny that they are debt collectors, or that they engaged in any debt collection activity with respect to Plaintiff. In further answering, Defendants state that arbitration may be the more appropriate venue in which to bring this action as Defendants may possess certain rights to move this action to arbitration based upon contracts entered into by Plaintiff.

130987991v1 0932911

## PARTIES

### Plaintiff

5.     Plaintiff Linda Rice is an individual who resides in the Northern District of Illinois.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5.

### Midland Funding

6.     Defendant Midland Funding, LLC is a Delaware limited liability company with its principal place of business at 3111 Camino Del Rio N, #1300, San Diego, CA 92108. It does or transacts business in Illinois. Its registered agent and office are Illinois Corporation Service Co., 801 Adlai Stevenson Drive, Springfield, IL 62703.

**ANSWER:**     Defendants admit that Midland is a limited liability company organized under Delaware law, that Midland has a place of business located at 3111 Camino Del Rio N, #1300, San Diego, CA 92108 and that its registered agent for service of process is Illinois Corporation Service Co., 801 Adlai Stevenson Drive, Springfield, IL 62703. Defendants deny the remaining allegations in paragraph 6.

7.     Defendant Midland Funding LLC is in the business of taking title or claiming to take title to charged-off debts allegedly owed by consumers and originally owed to others.

**ANSWER:**     Defendants admit that Midland purchases and takes title to charged-off accounts. Defendants deny the remaining allegations in paragraph 7.

8.     Defendant Midland Funding LLC then seeks to enforce the debts against the consumers through lawsuits.

130987991v1 0932911

**ANSWER:** Defendants admit that lawsuits are sometimes filed on Midland's behalf to collect amounts owed on the accounts to which it has title. Defendants deny the remaining allegations contained in paragraph 8.

9. Most of the debts which defendants seek to collect are credit cards originally issued by banks. For example, during 2010, Encore reported that it purchased credit card receivables with a face value of $341,910,000 out of a total of $361,957,000 of all receivables, or more than 94%. (Encore Capital Form 10-K filed with the Securities & Exchange Commission for year ending Dec. 31, 2010, original page 25).

**ANSWER:** Defendants admit only that MCM seeks to collect credit card debts originally issued to banks and that Plaintiff purports to cite to a portion of a Form 10-K filed by Encore with the SEC.

10. Defendant Midland Funding LLC has paid an average of less than 5 cents on the dollar for the debts it has purchased or claims to have purchased.

**ANSWER:** Defendants admit that Midland purchases and takes title to charged-off accounts, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 10.

11. Defendant Midland Funding LLC was the plaintiff in over 3,000 collection lawsuits pending in the Illinois courts during the year preceding the filing of this action. Between May 16, 2011 and July 7, 2011, a period of less than two months, Midland Funding LLC filed 1,000 collection lawsuits in Cook County alone.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 11.

130987991v1 0932911

12. The mails and telephone system are used in connection with the prosecution of these Midland Funding LLC lawsuits.

**ANSWER:** Defendants admit only that lawsuits are filed on Midland's behalf.

13. Defendant Midland Funding LLC is a "debt collector" as defined in the FDCPA.

**ANSWER:** Defendants deny the allegations contained in paragraph 13.

### MCM

14. Defendant MCM is a Kansas corporation with its principal place of business also located at 3111 Camino Del Rio N, #1300, San Diego, CA 92108. MCM does business in Illinois. Its registered agent and office are Illinois Corporation Service Co., 801 Adlai Stevenson Drive, Springfield, IL 62703.

**ANSWER:** Defendants admit only that MCM is a Kansas corporation with a place of business at 3111 Camino Del Rio N., Suite 1300 in San Diego, CA 92108 and that MCM's agent for service of process in Illinois is Illinois Corporation Service Co., 801 Adlai Stevenson Drive, Springfield, IL 62703. Defendants deny the remaining allegations contained in paragraph 14.

15. Defendant MCM is a collection agency and collects the bad debts allegedly purchased by MRC.

**ANSWER:** Defendants admit that Defendant MCM may be considered a debt collector under the FDCPA, for some purposes. Defendants deny that MCM is a "collection agency." Defendants further state that "MRC" is not a party to this case and has no relevance to Plaintiff's claims. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation that Defendant MCM acted as a debt collector with respect to Plaintiff, because they are without knowledge or information sufficient to form a belief as to the purpose for which Plaintiff incurred her debt.

16. Defendant MCM holds a collection agency license from the state of Illinois.

**ANSWER:** Defendants admit the allegations contained in paragraph 16.

17. Defendant MCM uses the mails and telephone system to conduct its business.

**ANSWER:** Defendants admit that in certain instances, MCM uses the mails and telephone system to conduct its business. Defendants deny the remaining allegations, if any, in this paragraph.

18. Defendant MCM is a "debt collector" as defined in the FDCPA.

**ANSWER:** Defendants admit that Defendant MCM may be considered a debt collector under the FDCPA for some purposes. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations that Defendant MCM acted as a debt collector with respect to Plaintiff because they are without knowledge or information sufficient to form a belief as to the purpose for which Plaintiff incurred her debt.

## Encore

19. MCM and Midland Funding LLC are under common ownership. Both are subsidiaries of Encore, a publicly traded Delaware corporation, with offices at 3111 Camino Del Rio N, #1300, San Diego, CA 92108.

**ANSWER:** Defendants admit the allegations contained in paragraph 19.

20. Encore has stated in its filings with the Securities & Exchange Commission that "We are a leader in consumer debt buying and recovery. We purchase portfolios of defaulted consumer receivables at deep discounts to face value and use a variety of operational channels to maximize our collections from these portfolios." Form 10-K filed by Encore with the SEC for year ending Dec. 31, 2010, original page 1.

**ANSWER:** Defendants admit solely that Plaintiff purports to cite to a portion of a Form 10-K filed by Encore with the SEC.

21. Encore (a) secures funds from investors and lenders for the purpose of purchasing the debts to which Midland Funding LLC takes title, (b) devises the collection strategies used by the other defendants, and (c) participated in the debt collection activities complained of.

**ANSWER:** Denied.

22. On March 10, 2005, Encore stated to public investors that it is a "50 year old purchaser and manager of consumer receivables portfolios." Form 8-K filed by Encore with the SEC on March 10, 2005.

**ANSWER:** Defendants admit solely that Plaintiff purports to cite to a portion of a Form 8-K filed by Encore with the SEC.

23. Encore is a "purchaser and manager of charged-off consumer receivables portfolios" – i.e., bad consumer debts. " Form 8-K filed by Encore with the SEC on March 3, 2005, including Exhibit 99.1 thereto.

**ANSWER:** Defendants admit solely that Plaintiff purports to cite to a portion of a Form 8-K filed by Encore with the SEC.

24. Encore "acquires these portfolios at deep discounts from their face values." A June 9, 2011 filing with the SEC (Form 8K, Exhibit 99.1) reflecting a presentation at an "Investor Day" by Brandon Black, President and Chief Executive Officer, Paul Grinberg, EVP and Chief Financial Officer, Amy Anuk vice president for Business Development and Manu Rikhye, Managing Director of India Operations, stated that Encore had invested $1.9 billion to acquire receivables with a face value of $58 billion since its inception, or about 3.3 cents on the dollar, and had acquired 34 million consumer accounts since its inception.

**ANSWER:** Defendants admit solely that Plaintiff purports to cite to a portion of a Form 8-K filed by Encore with the SEC.

25. The same document states that in 2011 legal collections resulted in revenue of $266.8 million in 2010 and $88.5 million during the first quarter of 2011.

**ANSWER:** Defendants admit solely that Plaintiff purports to cite to a portion of a Form 8-K filed by Encore with the SEC.

26. During 2010, total collections by Encore amounted to $604.6 million (Form 10-K for year ending Dec, 31, 2010, original page 25), so that the legal collections were over 44% of the total.

**ANSWER:** Defendants admit solely that Plaintiff purports to cite to a portion of a Form 10-K filed by Encore with the SEC.

27. Encore devises the "collection strategies" used by its subsidiaries. Form 10-K filed by Encore with the SEC for the year ending December 31, 2010, original p. 6, states, under "Collection Approach," that "We expand and build upon the insight developed during our purchase process when developing our account collection strategies for portfolios we have acquired. Our proprietary consumer-level collectability analysis is the primary determinant of whether an account is actively serviced post-purchase. Throughout our ownership period, we periodically refine this analysis to help determine the most effective collection strategy to pursue for each account."

**ANSWER:** Defendants admit solely that Plaintiff purports to cite to a portion of a Form 10-K filed by Encore with the SEC.

28. On Oct. 28, 2004, Encore CEO Gregory stated in an earnings conference call:

> . . . Our board also elected Brandon Black, President and Chief Operating Officer of the Company. Brandon has been Executive Vice President and Chief Operating Officer for the past 5 years and has done a superb job. Brandon is the architect of many of the analytical procedures and collection processes that distinguish Encore's approach to the business. His intelligence, analytical

> ability and drive for success have been instrumental in Encore's success and in his new role will be key factors as we continue to build the business. . . .
>
> On the purchasing front, we invested $21 million in new portfolios during the quarter, up 10 percent from the prior year's quarters purchases of $19 million. Our average purchase price for the quarter was 2.91 percent which was down slightly from last year's 3.02 percent. This was not as much as we had hoped to invest but appropriate given the high prices for much of the available supply.
>
> Year-to-date, our purchases have been $57 million or about $7 million less than last year's first 3 quarters. For the year-to-date, approximately 48 percent of our purchases have been non-credit card, compared with just 6 percent last year for the same period. We will have more to say about purchasing in a minute but the purchasing discipline and analytical approach we've always taken are more important now than ever before. . . .

**ANSWER:** Defendants admit that the Plaintiff purports to cite to certain statements attributed to former Encore CEO Gregory during a October 28, 2004, earnings conference call. Defendants deny that the allegations contained in this paragraph represent a true and correct version of the statements made by former Encore CEO Gregory.

29. Encore is responsible for determining what debts to purchase and at what price. In an earnings conference call conducted by executives of Encore on Aug. 3, 2004, Encore CEO Gregory stated:

> Encore enjoyed another good quarter. Our collections, revenue and net income all increased. In addition, we closed a terrific new loan with J.P. Morgan Chase that dramatically lowers our cost of borrowing, increases our flexibility, and should result in better financial returns for Encore.
>
> Finally, just after the end of the quarter, we closed the biggest purchase we've ever made on terms we considered quite attractive. We are very excited about our industry and its future, but most importantly, Encore's ability to excel in the future.

**ANSWER:** Defendants admit that the Plaintiff purports to cite to certain statements attributed to former Encore CEO Gregory during a August 3, 2004 earnings conference call.

9

Defendants deny that the allegations contained in this paragraph represent a true and correct version of the statements made by former Encore CEO Gregory.

> 30. On Aug. 3, 2004, Encore CEO Gregory stated in another such call:
>
>> We believe our business model is especially well-suited to this changing environment. Specifically, our business model emphasizes customer-level rather than portfolio-level analytics, innovative and flexible collection processes and conservative accounting.
>>
>> The keystone to everything we do is customer-level analytics -- understanding the individual customer and his changing ability to pay. Prior to purchase and throughout our ownership, we analyze the individual customer's ability and willingness to pay.
>>
>> We are always asking the same question -- can this particular customer pay us all or some of what he owes now? By focusing on the customer and information about him, we are able to move comfortably across various asset types as well as the portfolio ages or time since charge-off. In this process, a score is generated for every single account we own and the score is refreshed quarterly to ensure that it maintains its accuracy.
>>
>> The second major aspect of our business model is our use of innovative collection strategies that are driven by the underlying collectibility score of each customer. In other words, to fully benefit from the new information we are generating about the individual customers, we have to be able to apply different collection strategies as appropriate, or at least be able to apply the traditional approaches in new ways that will be more effective.
>>
>> We now have eight unique revenue channels that each contribute more than $1 million per month in collections, including direct mail, balance transfer, external legal, and our recently developed agency outsourcing strategy.

**ANSWER:** Defendants admit that the Plaintiff purports to cite to certain statements attributed to former Encore CEO Gregory during an August 3, 2004 earnings conference call. Defendants deny that the allegations contained in this paragraph represent a true and correct version of the statements made by former Encore CEO Gregory.

130987991v1 0932911

31. Among other things, Encore determines the age of the debts that are purchased, and whether out-of-statute debts will be acquired.

**ANSWER:** Denied.

32. Because of its intimate involvement in collection activities, Encore is a debt collector as defined in the FDCPA.

**ANSWER:** Denied.

### FACTS

33. Defendants have been attempting to collect from plaintiff an alleged credit card balance claimed to have been incurred for personal, family or household purposes and not for business purposes.

**ANSWER:** Defendants admit that MCM attempted to collect from Plaintiff Rice an alleged credit card balance. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

34. Plaintiff disputed the debt.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 34.

35. Beginning in April 2011, MCM sent plaintiff a series of letters attached as Exhibits A-D seeking to collect on the alleged credit card debt.

**ANSWER:** Admitted.

36. Exhibits A-D are form documents regularly used by defendant MCM.

**ANSWER:** Defendants admit that in certain instances the letters attached as Exhibits A-D are sent to debtors. Defendants deny the remaining allegations contained in paragraph 36.

37. Each of Exhibits A-D was sent by MCM on behalf of Midland Funding LLC.

**ANSWER:** Admitted.

130987991v1 0932911


38. The last payment on the alleged debt was on January 19, 2006.

**ANSWER:** Defendants admit that at the time the account purchased the last payment date provided was January 17, 2006. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

39. The statute of limitations on a credit card bill in Illinois is five years.

**ANSWER:** Defendant objects to the allegations in paragraph 39 to the extent they assert only legal conclusions to which no response is required. Subject to and without waiving said objection, and to the extent a response is required, Defendant states that statute of limitations in Illinois vary depending on whether the account was opened pursuant to a written contract. Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the information in paragraph 39 because Plaintiff fails to allege facts involving the nature of her account.

40. Defendants regularly attempt to collect debts on which the statute of limitations has expired.

**ANSWER:** Defendants deny the allegations contained in paragraph 40.

41. Nothing in Exhibits A, B, C or D disclosed that the debt was barred by the statute of limitations.

**ANSWER:** Defendants deny that the allegations in paragraph 41 accurately or completely characterize the nature and scope of Exhibits A-D.

42. Nothing in Exhibits A, B, C, or D disclosed the date of the transactions giving rise to the claimed debt.

**ANSWER:** Defendants deny that the allegations in paragraph 42 accurately or completely characterize the nature and scope of Exhibits A-D.

130987991v1 0932911

43. It is the policy and practice of defendants to send letters seeking to collect time-barred debts that do not disclose the fact that they are time-barred.

**ANSWER:** Denied.

44. It is the policy and practice of defendants to send letters seeking to collect time-barred debts that do not disclose the dates of the transactions giving rise to the debts.

**ANSWER:** Denied.

45. The Federal Trade Commission has determined that "Most consumers do not know their legal rights with respect to collection of old debts past the statute of limitations . . . . When a collector tells a consumer that she owes money and demands payment, it may create the misleading impression that the collector can sue the consumer in court to collect that debt." (http://www.ftc.gov/opa/2012/01/asset.shtm) The FTC entered into a consent decree with Asset Acceptance, one of the largest debt buyers in the United States, requiring that it disclose to consumers when it is attempting to collect debts that are barred by the statute of limitations. *United States of America (For the Federal Trade Commission) v. Asset Acceptance, LLC,* Case No. 8:12-cv-182-T-27EAJ (M.D.Fla.).

**ANSWER:** Defendants admit that Plaintiff quotes and paraphrases a portion of a consent decree entered into by the parties not a party to the instant lawsuit. Defendants deny that the information in paragraph 45 accurately characterizes the nature and scope of the consent decree when taken as a whole, and specifically denies that the consent decree has any bearing on the instant lawsuit.

## VIOLATION ALLEGED

46. Defendants engaged in unfair and deceptive acts and practices, in violation of 15 U.S.C. §§1692e, 1692e(2), 1692e(10), and 1692f, by dunning consumers on time-barred debts without disclosure of that fact.

130987991v1 0932911

**ANSWER:** Denied.

47. The nondisclosure is exacerbated by the offer of a "settlement" in <u>Exhibits A, C and D</u>. An offer to settle implies a colorable obligation to pay.

**ANSWER:** Denied.

48. Section 1692e provides:

> § 1692e. False or misleading representations [Section 807 of P.L.]
>
> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .
>
> (2) The false representation of--
>
> (A) the character, amount, or legal status of any debt; . . .
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .

**ANSWER:** Defendants admit only that paragraph 48 quotes a portion of the FDCPA and denies any violation of the Act.

49. Section 1692f provides:

> § 1692f. Unfair practices [Section 808 of P.L.]
>
> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. . . .

**ANSWER:** Defendants admit only that paragraph 49 quotes a portion of the FDCPA and denies any violation of the Act.

## CLASS ALLEGATIONS

50. Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

130987991v1 0932911

**ANSWER:** Defendants admit that plaintiff purports to bring a claim on behalf of a class and deny the remaining allegations contained in paragraph 50.

51. The class consists of (a) all individuals in Illinois, Indiana and Wisconsin, (b) to whom any of the defendants (c) sent a letter seeking to collect a debt (d) which debt was a credit card debt on which the last payment had been made more than five years (Illinois) or six years (Indiana and Wisconsin) prior to the letter (e) which letter was sent on or after a date one year prior to the filing of this action and on or before a date 20 days after the filing of this action.

**ANSWER:** Defendants deny that a class exists or that one should be certified and accordingly deny the allegations in paragraph 51.

52. On information and belief, the class is so numerous that joinder of all members is not practicable.

**ANSWER:** Defendants deny that a class exists or that one should be certified and accordingly deny the allegations in paragraph 52.

53. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are (a) whether defendants attempt to collect time-barred debts without disclosure of that fact and (b) whether such practice violates the FDCPA.

**ANSWER:** Denied.

54. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

**ANSWER:** Denied.

55. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and FDCPA litigation.

130987991v1 0932911

**ANSWER:** Denied.

56. A class action is superior for the fair and efficient adjudication of this matter, in that:

   a. Individual actions are not economically feasible.

   b. Members of the class are likely to be unaware of their rights;

   c. Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

**ANSWER:** Denied.

WHEREFORE, Defendants, MIDLAND CREDIT MANAGEMENT, INC.; MIDLAND FUNDING LLC; and ENCORE CAPITAL GROUP, INC. respectfully request that the Court dismiss the Complaint in its entirety, enter judgment in favor of Defendants on Plaintiff's Complaint and grant such other and further relief in its favor as the Court deems just and proper.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

For its First Affirmative Defense, Defendants state that any violation of the FDCPA, which Defendants deny occurred, was not intentional and would have resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error.

### Second Affirmative Defense

For its Second Affirmative Defense, Defendants state that that Plaintiff's purported causes of action may not be allowed to proceed within the United States District Court system as Defendants may possess the contractual right to move this action to arbitration based on the contract Plaintiff entered into with her original creditor.

### Third Affirmative Defense

For its Third Affirmative Defense, Defendants state that additional affirmative defenses may exist as to individual class members in the event a class is certified, such as the Voluntary Payment Doctrine, class members who filed for Chapter 7 bankruptcy, or other individual defenses. Defendants therefore reserve the right to amend its Affirmative Defenses to address those potential defenses.

130987991v1 0932911

        Respectfully submitted,

        HINSHAW & CULBERTSON LLP

        */s/Jennifer W. Weller*
        Jennifer W. Weller

David M. Schultz
Jennifer W. Weller
Hinshaw & Culbertson LLP
222 North LaSalle Street, Suite 300
Chicago, IL 60601-1081
Telephone:312-704-3000
Facsimile:312-704-3001
dschultz@hinshawlaw.com
jweller@hinshawlaw.com

17

## **CERTIFICATE OF SERVICE**

   I, Jennifer W. Weller, an attorney, certify that I shall cause to be served a copy of **ANSWER TO COMPLAINT – CLASS ACTION** upon the above listed individual(s), by deposit in the U.S. mail box at 222 North LaSalle Street, Chicago, Illinois 60601, postage prepaid, before the hour of 4:00 p.m., messenger delivery, Federal Express, facsimile transmitted from (312) 704-3001, or electronically via the Case Management/Electronic Case Filing System ("ECF") as indicated, on **February 12, 2015.**

☒ CM/ECF
☐ Facsimile
☐ Federal Express
☐ Mail
☐ Messenger

To: *All Parties of Record*

                HINSHAW & CULBERTSON LLP

                s/ *Jennifer W. Weller*
                Jennifer W. Weller

130987991v1 0932911